THOMAS L. SANSONETTI
    Assistant Attorney General
ROBERT D. MULLANEY
    Trial Attorney
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Telephone: (415) 744-6491

PAUL M. WARNER (Utah Bar No. 3389)
    United States Attorney
JEANNETTE SWENT (Utah Bar No. 6043)
    Assistant United States Attorney
District of Utah
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

Attorneys for Plaintiff United States of America

LARRY W. LINDEEN
Exxon Mobil Corporation
800 Bell Street
Houston, Texas 77002-7426
Telephone: (713) 656-3429

Attorney for Defendant Mobil Exploration & Producing U.S. Inc.

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUN 08 2005

MARKUS B. ZIMMER, CLERK
BY _____
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL ACTION NO. |
| Plaintiff, ) | |
| v. ) | CONSENT DECREE |
| MOBIL EXPLORATION & ) | |
| PRODUCING U.S. INC., ) | Judge Paul G. Cassell |
| Defendant. ) | DECK TYPE: Civil |
| ) | DATE STAMP: 04/08/2005 @ 11:35:40 |
| ) | CASE NUMBER: 2:05CV00319 PGC |

## TABLE OF CONTENTS

I.  JURISDICTION AND PARTIES BOUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  OBJECTIVES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.  COMPLIANCE MEASURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        9.      Emission Limits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        10.     Monitoring. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        11.     Operation and Maintenance of Main Flare and Compressors. . . . . . . . . . . . . . 10
        12.     Root Cause Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        13.     Corrective Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        14.     Permitting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT . . . . . . . . . . . . . . . . . . . . . . 15
        18.     SEP Completion Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VII.  COMPLIANCE REPORTING AND RECORDKEEPING  . . . . . . . . . . . . . . . . . . 17

VIII.  STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        27.     Stipulated Penalties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        29.     Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IX.  RIGHT OF ENTRY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

X.  FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XI.  DISPUTE RESOLUTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XII.  NOTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XIII.  EFFECT OF SETTLEMENT/NON-WAIVER PROVISIONS . . . . . . . . . . . . . . . 27

XIV.  EFFECTIVE DATE AND TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XV.  MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        54.     Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        55.     Integration and Modifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        56.     Retention of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        57.     Public Comment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        58.     Final Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

i

1  WHEREAS, concurrent with the Lodging of this Consent Decree, Plaintiff United States

2  of America, on behalf of the United States Environmental Protection Agency ("EPA"), is filing a

3  Complaint against Defendant Mobil Exploration & Producing U.S. Inc. (hereinafter referred to as

4  "Mobil" or "Defendant"), alleging violations of the federal Clean Air Act, 42 U.S.C. §§ 7401-

5  7671q (the "Act"), at Mobil's McElmo Creek Unit oil production facility and associated oil

6  fields (the "Facility"), located near Aneth, Utah, on the Navajo Nation;

7  WHEREAS, Mobil, without filing any answer in this action, neither admits nor denies the

8  violations alleged in the Complaint;

9  WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds,

10 that this Consent Decree has been negotiated by the Parties in good faith and that this Consent

11 Decree is fair, reasonable, and in the public interest;

12 NOW, THEREFORE, before taking any testimony, without the adjudication of any issue

13 of fact or law, and upon the consent and agreement of the Parties to this Consent Decree, it is

14 hereby ORDERED, ADJUDGED, AND DECREED as follows:

15 I. JURISDICTION AND PARTIES BOUND

16 1.      This Court has jurisdiction over the subject matter of this action under Section

17 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court also

18 has personal jurisdiction over Defendant.  Venue is proper in this judicial district under Section

19 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395, because it is the

20 judicial district in which Mobil resides and in which the violations alleged in the Complaint have

21 occurred and are occurring.  Notice of the commencement of this action has been given to the

22 Utah Department of Environmental Quality and the Navajo Nation Environmental Protection

23 Agency in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b).  Mobil consents to

24 and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter, enforce,

25 modify, or terminate this Consent Decree.

26 2.      This Consent Decree shall apply to and be binding upon Mobil and its successors

27

28                                                   1

1   and assigns, and upon the United States on behalf of EPA.

2        3.       If Mobil transfers any ownership interest or right to operate the Facility, including,

3   but not limited to, the sale, lease, or licensing of others to operate all or part of the Facility, Mobil

4   shall give notice of this Consent Decree to any successor-in-interest prior to such transfer.  Mobil

5   shall send a copy of such written notification to EPA, at the address listed in Section XII

6   (Notification) of this Consent Decree, concurrently with such sale or transfer.  Upon sale or

7   transfer of such Facility, Mobil shall attach a copy of this Consent Decree to the agreement by

8   which such Facility is sold or transferred and shall make performance of the obligations of Mobil

9   under this Consent Decree an obligation of any purchaser or transferee.  For 180 days after sale

10  or transfer of such Facility, Mobil and its successor in interest shall be jointly and severally liable

11  for obligations under this Consent Decree.  Thereafter, Mobil shall either retain or be relieved of

12  its obligations under the Consent Decree as provided in Appendix A.

13                              II.  DEFINITIONS

14       4.       Unless otherwise expressly provided herein, terms used in this Consent Decree

15  shall have the meanings assigned to those terms in the Act, 42 U.S.C. §§ 7401-7671q, and the

16  federal rules and regulations promulgated thereunder.  Whenever terms listed below are used in

17  this Consent Decree or any appendices or documents incorporated by reference hereto, the

18  following definitions shall apply:

19              a.       "Act" shall mean the Clean Air Act, as amended, 42 U.S.C. §§ 7401-

20  7671q.

21              b.       "C.F.R." shall mean the Code of Federal Regulations.

22              c.       "CO" shall mean carbon monoxide.

23              d.       "$CO_2$ Breakthrough" shall mean an event where a gas or fluid injected in

24  the Facility's oil field for the purpose of promoting the production of oil contacts a producing

25  well and results in an increase in gas volume to compressor station equipment.

26              e.       "Consent Decree" or "Decree" shall mean this written agreement and all

27

28                                  2

1    appendices hereto and any modifications of the agreement or appendices.

2          f.     "Day" shall mean a calendar day, unless expressly stated to be a working

3    day.  In computing any period of time under this Consent Decree, where the last day of such

4    period would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of

5    business on the next day that is not a Saturday, Sunday, or federal holiday.

6          g.     "Defendant" or "Mobil" shall mean Mobil Exploration and Producing U.S.

7    Inc.

8          h.     "Dispute Resolution" shall mean the dispute resolution procedures set

9    forth in Section XI of this Consent Decree.

10          i.     "DOJ" shall mean the United States Department of Justice.

11          j.     "Effective Date" shall mean the date of entry of the Consent Decree by the

12    Clerk of the United States District Court for the District of Utah.

13          k.     "Eligible SEP Costs" shall mean money that Mobil spends to purchase

14    equipment specified in Appendix D to this Consent Decree, or substantially similar equipment.

15          l.     "EPA" shall mean the United States Environmental Protection Agency.

16          m.     "Facility" shall mean Mobil's McElmo Creek Unit oil production facility

17    and associated oil fields, located near Aneth, Utah, on the Navajo Nation.

18          n.     "Field Flares" shall mean the following flares at the Facility:  (i) Tank

19    Battery Flares at MCU Area 1 Battery, MCU Area 2 Battery, MCU Area 4 Battery, and MCU

20    Area 6 Battery; and (ii) Satellite Flares at MCU Section 2, MCU Section 3, MCU Section 5,

21    MCU Section 6, MCU Section 9, MCU Section 11, MCU Section 17, MCU Section 19, MCU

22    Section 32, and MCU Section 33.

23          o.     "Final PSD Permit" shall mean a permit (i) that is issued in accordance

24    with the provisions of 40 C.F.R. § 52.21; (ii) that includes, but is not limited to, federally-

25    enforceable terms and conditions that are at least as stringent as all of the terms and conditions

26    included in Paragraphs 9.a., 10, 11, and 25(i) through (ix) of this Consent Decree, with the

27

28                        3

1    exception that the quarterly report required by Paragraph 25 may be changed, at the discretion of

2    the permitting authority, to a semiannual report; and (iii) that is no longer subject to any judicial

3    review procedures.

4          p.    "Final Title V Permit" shall mean a permit (i) that is issued in accordance

5    with the provisions of 40 C.F.R. Parts 70 and 71, whichever is applicable; (ii) that includes, but

6    is not limited to, federally-enforceable terms and conditions that are at least as stringent as all of

7    the terms and conditions included in the Final PSD Permit; and (iii) that is no longer subject to

8    any judicial review procedures.

9          q.    "Flaring Incident" shall mean continuous or intermittent flaring at the

10    Main Flare that occurs after the Effective Date of this Consent Decree and results in the

11    emissions of $SO_2$ equal to, or greater than, five-hundred (500) pounds in any twenty-four (24)

12    hour period; provided, however, that if five-hundred (500) pounds or more of $SO_2$ have been

13    emitted in a twenty-four (24) hour period and the flaring continues into subsequent, contiguous,

14    non-overlapping twenty-four (24) hour period(s), each period of which results in emissions equal

15    to, or greater than, five-hundred (500) pounds of $SO_2$, then only one Flaring Incident shall have

16    occurred.  Subsequent, contiguous, non-overlapping periods are measured from the initial

17    commencement of flaring within the Flaring Incident.

18          r.    "$H_2S$" shall mean hydrogen sulfide.

19          s.    "Lodging" or "Date of Lodging" shall mean the date on which Plaintiff

20    lodges this Consent Decree with the United States District Court for the purpose of seeking

21    public comment on the Consent Decree.

22          t.    "Main Flare" shall mean the flare installed as part of the Facility's former

23    gas processing plant.

24          u.    "Main Flare Emissions" shall mean the emissions from the Main Flare at

25    the Facility as well as all emissions that result from:  (1) combustion of fuel gas in the Main

26    Flare's pilot, (2) the closed drain and filter backwash operations, (3) $CO_2$ Breakthroughs, (4) any

27

28                   4

1   Scheduled Maintenance, and (5) unscheduled maintenance of the Facility's compressors.

2            v.      "Malfunction" shall mean any sudden and unavoidable breakdown of

3   process or pollution control equipment.  $CO_2$ Breakthroughs or Scheduled Maintenance of the

4   Facility's compressors are not Malfunctions.

5            w.      "$NO_x$" shall mean oxides of nitrogen.

6            x.      "Paragraph" shall mean a portion of this Consent Decree identified by an

7   Arabic numeral or an upper or lower case letter.  Any reference to a Paragraph designated by an

8   Arabic numeral includes all subsequent Paragraphs designated by consecutive lower case letters.

9            y.      "Parties" shall mean the United States and Mobil.

10           z.      "Plaintiff" shall mean the United States.

11           aa.     "PSD Permit" shall mean a construction permit issued in accordance with

12  the provisions of 40 C.F.R. § 52.21.

13           bb.     "Root Cause" shall mean the primary cause of a Flaring Incident as

14  determined through a process of investigation; provided, however, that if a Flaring Incident

15  encompasses multiple releases of $SO_2$, the "Root Cause" may encompass multiple primary

16  causes.

17           cc.     "Scheduled Maintenance" shall mean work that is part of the routine work

18  plan for the compressors located at the Facility's former gas processing plant.  This work is

19  typically planned and arranged on a set frequency, usually based on periods of time (e.g., daily,

20  weekly or monthly) or on the operating hours of the equipment.  Scheduled Maintenance shall

21  not include work necessitated by the failure of a part of a compressor.

22           dd.     Section" shall mean a portion of this Consent Decree identified by an

23  upper-case Roman numeral.

24           ee.     "SEP" shall mean the supplemental environmental project required by this

25  Consent Decree.

26           ff.     "$SO_2$" shall mean sulfur dioxide.

27

28                                                  5

1    gg.    "United States" shall mean the United States of America, acting on behalf

2  of EPA.

3    hh.    "VOC" shall mean volatile organic compounds as defined in 40 C.F.R.

4  § 51.100(s).

5                            III.  OBJECTIVES

6    5.    It is the express purpose of the Parties entering into this Consent Decree to further

7  the objectives of the Act and to resolve the violations that the United States specifically alleged

8  in the Complaint filed in this action.  To further these objectives, Mobil agrees, inter alia, to pay

9  the civil penalty as set forth in Section IV (Civil Penalty), to comply with the measures as set

10  forth in Section V (Compliance Measures), and to perform the SEP as set forth in Section VI

11  (Supplemental Environmental Project).

12                          IV.  CIVIL PENALTY

13    6.    After the Effective Date and within ten (10) days of the receipt of the Electronic

14  Fund Transfer procedures described in Paragraph 7 below, Mobil shall pay to the United States a

15  civil penalty in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000),

16  plus interest at 1.29 percent per year from the date of August 21, 2003, through the date of

17  payment.

18    7.    Payments under this Consent Decree shall be made by Electronic Funds Transfer

19  ("EFT") to the United States Treasury according to current United States EFT procedures.  The

20  United States shall provide a copy of current EFT procedures to Mobil at the address listed in

21  Section XII (Notification) of this Consent Decree.  Concurrently with the electronic funds

22  transfer, Mobil shall send, by facsimile, notice of payment to the person designated as "Point of

23  Contact" on the EFT instructions, and shall send notice of payment to both EPA and DOJ at the

24  addresses listed in Section XII (Notification).  The notice of payment shall identify (i) the date

25  and amount of money transferred; (ii) the name and address of the transferring bank; (iii) the civil

26  action case name and case number; (iv) USAO File Number 2003V00248; (v) DOJ Case Number

27

28                            6

1   90-5-2-1-2237; (vi) this Consent Decree (including Effective Date); and (vii) a description of the

2   reason for payment (including the Paragraph number(s) of this Consent Decree that are most

3   relevant to the payment).

4          8.     The payment of the civil penalty specified in this Section shall not be deductible

5   by Mobil or any other person or entity for federal taxation purposes.

6   V.  COMPLIANCE MEASURES

7          9.     Emission Limits.

8             a.     From the Effective Date of this Consent Decree through the effective date

9   of the Final Title V Permit, Mobil's Main Flare Emissions shall not exceed the following rolling

10  365-day cumulative amounts (to be calculated each day):  (i) 60 tons per year of $SO_2$, (ii) 73 tons

11  per year of CO, (iii) 13.4 tons per year of $NO_x$, and (iv) 95.4 tons per year of VOC.  Field Flares

12  shall not be used to circumvent the emission limits of this Paragraph.

13            b.     The provisions of Section VIII of this Consent Decree (Stipulated

14  Penalties) shall apply for Mobil's failure to comply with any of the emission limits in Paragraph

15  9.a above.  However, Mobil may assert, as an affirmative defense to a demand by the United

16  States for stipulated penalties, that the alleged violation was due to a Malfunction.  To qualify as

17  a Malfunction, Mobil has the burden of proof of demonstrating that:

18            (1)     The emissions in question were not the result of any $CO_2$ Breakthroughs or

19                   any Scheduled Maintenance of the Facility's compressors;

20            (2)     The emissions in question were caused by a sudden, unavoidable

21                   breakdown of process or pollution control equipment, beyond the control

22                   of Mobil, its contractors, or any entity controlled by Mobil;

23            (3)     The emissions in question (i) did not stem from any activity or event that

24                   could have been foreseen and avoided, or planned for, and (ii) could not

25                   have been avoided by better operation and maintenance practices;

26            (4)     To the maximum extent practicable, the air pollution control equipment or

27

28  7

1    processes were maintained and operated in a manner consistent with good

2    engineering practice for minimizing emissions;

3    (5)    Repairs were made in an expeditious fashion when Defendant knew or

4    should have known that $SO_2$ emissions resulting from the event would be

5    equal to, or greater than, 500 pounds in a 24-hour period; (off-shift labor

6    and overtime must have been utilized, to the extent practicable, to ensure

7    that such repairs were made as expeditiously as practicable);

8    (6)    The amount and duration of the emissions in question were minimized to

9    the maximum extent practicable during periods of such emissions;

10   (7)    All possible steps were taken to minimize the impact of the emissions in

11   question on ambient air quality;

12   (8)    All emission monitoring systems were kept in operation if at all possible;

13   (9)    The actions of Mobil, its contractors, or any entity controlled by Mobil in

14   response to the emissions in question were documented by properly

15   signed, contemporaneous operating logs, or other relevant evidence;

16   (10)   The emissions in question were not part of a recurring pattern indicative of

17   inadequate design, operation, or maintenance. (Emissions associated with

18   a Flaring Incident are presumed to be part of a recurring pattern indicative

19   of inadequate design, operation, or maintenance if the Root Cause of the

20   Flaring Incident is a recurrence of the same Root Cause that caused a

21   previous Flaring Incident, unless EPA agrees that such previous Flaring

22   Incident was the result of a Malfunction);

23   (11)   If the emissions in question are associated with a Flaring Incident, Mobil

24   complied with all of the applicable requirements of Paragraphs 12 and 13

25   of this Consent Decree; and

26   (12)   Mobil properly and promptly notified EPA as follows:

27

28                                          8

1          (a)     if the emissions in question are associated with a Flaring Incident,

2                      Mobil complied with the notification and reporting requirements of

3                      Paragraphs 12 and 25 of this Consent Decree;

4          (b)     if the emissions in question are not associated with a Flaring

5                      Incident, Mobil listed such emissions as attributable to a

6                      Malfunction in the quarterly report required by Paragraph 25 of this

7                      Consent Decree.

8          c.     If $SO_2$ emissions exceed 1,000 pounds per day, Mobil may submit a

9  written notification to EPA, claiming that the emissions resulted from a major Malfunction.  In

10  the written notification, Mobil shall submit information to show that the incident qualifies as a

11  Malfunction pursuant to Paragraph 9.b.(1) - (10).  EPA agrees to review promptly such written

12  notification regarding a major Malfunction and to respond to the notification within 30 days after

13  EPA receives the written notification.

14          10.    Monitoring.  In determining compliance with the emission limits referred to in

15  Paragraph 9 above, from the Effective Date of this Consent Decree through the effective date of

16  the Final Title V Permit, Mobil shall measure and record the $H_2S$ concentration in the field gas at

17  the Facility in each calendar month at the inlet to the Facility's former gas processing plant where

18  the Main Flare is located, and shall continuously measure and record the volume of gas

19  combusted in the Main Flare.  Each and every calendar day, Mobil shall calculate and record the

20  daily emissions from the Main Flare based on the last recorded measurement of $H_2S$

21  concentration in the field gas at the Facility and that day's recorded volume of gas combusted in

22  the Main Flare.  If Mobil is unable to measure the volume of gas combusted in the Main Flare on

23  any day, the volume of gas for that day shall be deemed to be equal to the daily average volume

24  of gas combusted in the Main Flare based on the previous 12 months' emissions data.  However,

25  the use of this daily average as substitute data neither relieves nor excuses Mobil from complying

26  with the sampling, data collection, and monitoring requirements of this Paragraph.

27

28                                               9

1    11.    Operation and Maintenance of Main Flare and Compressors. From the Effective

2  Date, Mobil shall at all times and to the extent practicable, including during periods of startup,

3  shutdown, Malfunction, $CO_2$ Breakthrough, Scheduled Maintenance, or unscheduled

4  maintenance of the Facility's compressors, operate and maintain the compressor station

5  equipment and Main Flare in a manner consistent with good air pollution control practices for

6  minimizing emissions.

7         a.    As of the Effective Date, Mobil shall comply with the provisions of the

8  Operations and Maintenance Plan ("O&M Plan") contained in Appendix B, which is hereby

9  incorporated by reference into this Consent Decree.   Mobil shall follow the procedures for the

10  inspection of the Facility's compressors and associated equipment as set forth in the Life Cycle

11  Maintenance Plan in Appendix B, and shall maintain inspection logs at the Facility documenting

12  that these inspections have been conducted.  Mobil shall maintain daily records at the Facility

13  regarding operation of the Facility's compressors on a Daily Plant Reading Form.  (An exemplar

14  of such a Form is contained in Appendix B.)  Mobil shall also maintain a supply of designated

15  spare parts for the Facility's compressors and associated equipment that includes all of the

16  equipment on the Spare Parts List contained in Appendix B.  After using equipment on its Spare

17  Parts List, Mobil shall replace such equipment as expeditiously as possible.  Mobil shall place a

18  purchase order for such equipment within 45 days after it is used.  Mobil shall conduct training

19  of Facility operators in accordance with the Training Program for Plant Operators contained in

20  Appendix B, and shall maintain records documenting that the training has been conducted.

21  Mobil shall retain copies of inspection logs and other records required by this Paragraph 11.a.

22  until termination of this Consent Decree.  Mobil's failure to comply with any requirement of the

23  O&M Plan shall constitute a violation of this Consent Decree subject to stipulated penalties.

24         b.    Within three hundred sixty-five (365) days from the Effective Date, Mobil

25  shall install an automatic air-assisted flare system on the Main Flare, pursuant to the provisions

26  of 40 C.F.R. § 60.18(c)(5) and (f)(6).  Thereafter, Mobil shall operate and maintain the Main

27

28                                            10

1    Flare in compliance with 40 C.F.R. § 60.18(c)(1), (c)(2), (c)(3)(ii), (c)(5), (d), (e), (f)(1) through

2    (f)(4), and (f)(6).

3            c.     Within three hundred ninety-five (395) days from the Effective Date,

4    Mobil shall submit to EPA, at the address listed in Section XII (Notification), a certification that

5    the Main Flare is equipped with an automatic air-assisted flare system and is in compliance with

6    all applicable provisions of 40 C.F.R. § 60.18(c)(1), (c)(2), (c)(3)(ii), (c)(5), (d), (e), (f)(1)

7    through (f)(4), and (f)(6).

8         12.    <u>Root Cause Analysis</u>.  No later than 72 hours after an event first qualifies as a

9    Flaring Incident, Mobil shall notify by telephone, at (415) 947-8715, the Chief of the Air

10    Enforcement Office, Air Division of EPA Region IX, of such Flaring Incident.  Telephone

11    notification shall be followed by a detailed written notification to EPA, at the address listed in

12    Section XII (Notification) of this Consent Decree, made within seven (7) working days after the

13    event first qualifies as a Flaring Incident.  For a Flaring Incident caused by Scheduled

14    Maintenance or a $CO_2$ Breakthrough, Mobil shall submit a report to EPA, at the address listed in

15    Section XII (Notification), no later than sixty (60) days following the end of such a Flaring

16    Incident, that sets forth the information required by Paragraph 12.a. through d. below.  Except for

17    those Flaring Incidents caused by Scheduled Maintenance or a $CO_2$ Breakthrough, Mobil shall

18    conduct a Root Cause Analysis in accordance with the program described in Appendix C to

19    evaluate the cause of each Flaring Incident and shall submit a report to EPA, at the address listed

20    in Section XII (Notification), no later than sixty (60) days following the end of a Flaring Incident,

21    that sets forth all of the following:

22            a.     The date and time that the Flaring Incident started and ended.  To the

23    extent that the Flaring Incident involved multiple releases either within a twenty-four (24) hour

24    period or within subsequent, contiguous, non-overlapping twenty-four (24) hour periods, Mobil

25    shall set forth the starting and ending dates and times of each release;

26            b.     An estimate of the quantity of $SO_2$ that was emitted and the calculations

27    that were used to determine that quantity;

28                                     11

1    c.    The steps, if any, that Mobil took to limit the duration and/or quantity of

2    $SO_2$ emissions associated with the Flaring Incident;

3    d.    Except for those Flaring Incidents caused by Scheduled Maintenance or a

4    $CO_2$ Breakthrough, a detailed analysis that sets forth the Root Cause and all contributing causes

5    of that Flaring Incident, to the extent determinable; however, if a Flaring Incident is caused by

6    Scheduled Maintenance or $CO_2$ Breakthrough, then Mobil need only identify the Root Cause as

7    Scheduled Maintenance or $CO_2$ Breakthrough (whichever is applicable), and either (i) describe

8    the nature of the work done for Scheduled Maintenance or (ii) identify the specific wells that

9    most likely experienced the $CO_2$ Breakthrough;

10    e.    An analysis of the measures, including possible design, operational, and

11    maintenance changes, that are available to reduce the likelihood of a recurrence of a Flaring

12    Incident resulting from the same Root Cause or contributing causes in the future.  If Mobil

13    concludes that corrective action(s) is (are) required under Paragraph 13, the report shall include a

14    description of the action(s) and, if not already completed, a schedule for its (their)

15    implementation, including proposed commencement and completion dates.  If Mobil concludes

16    that corrective action is not required under Paragraph 13, the report shall explain the basis for

17    that conclusion;

18    f.    To the extent that investigations of the causes and/or possible corrective

19    actions still are under way on the due date of the report, a statement of the anticipated date by

20    which a follow-up report fully conforming to the requirements of Paragraph 12.d and 12.e will be

21    submitted; provided, however, that if Mobil has not submitted a report or a series of reports

22    containing the information required to be submitted under this Paragraph within forty-five (45)

23    days (or such additional time as EPA may allow) after the due date for the initial report for the

24    Flaring Incident, the stipulated penalty provisions of Section VIII of this Consent Decree shall

25    apply, but Mobil shall retain the right to dispute, under Section XI (Dispute Resolution) of this

26    Consent Decree, any demand for stipulated penalties that was issued as a result of Mobil's failure

27    to submit the report required under this Paragraph within the time frame set forth.  Nothing in

28    12

1  this Paragraph shall be deemed to excuse Mobil from its investigation, notification, reporting,

2  and corrective action obligations under this Section V (Compliance Measures) for any Flaring

3  Incident that occurs after the Flaring Incident for which Mobil has requested an extension of time

4  under this Paragraph 12.f.

5          g.      To the extent that completion of the implementation of corrective

6  action(s), if any, is not finalized at the time of the submission of the report required under this

7  Paragraph, then, by no later than thirty (30) days after completion of the implementation of

8  corrective action(s), Mobil shall submit a report identifying the corrective action(s) taken and the

9  dates of commencement and completion of implementation.

10         13.     Corrective Action.  In response to any Flaring Incident, Mobil shall take, as

11  expeditiously as practicable, such interim and/or long-term corrective actions, if any, as are

12  consistent with good engineering practice to minimize the likelihood of a recurrence of the Root

13  Cause and all contributing causes of that Flaring Incident.

14         a.      If EPA does not notify Mobil in writing within sixty (60) days of receipt of

15  the report(s) required by Paragraph 12 that it objects to one or more aspects of Mobil's proposed

16  corrective action(s), if any, and schedule(s) of implementation, if any, then that (those) action(s)

17  and schedule(s) shall be deemed approved for purposes of Mobil's compliance with Paragraph 13

18  of this Consent Decree.  Upon approval by EPA, the provisions of the corrective action plan shall

19  become incorporated into this Consent Decree, and Mobil's failure to comply with any

20  requirement of the EPA-approved corrective action plan shall constitute a violation of this

21  Consent Decree subject to stipulated penalties.

22         b.      EPA does not, however, by its agreement to the entry of this Consent

23  Decree or by its failure to object to any corrective action that Mobil may take in the future,

24  warrant or aver in any manner that any of Mobil's corrective actions in the future will result in

25  compliance with the provisions of the Act.  Notwithstanding EPA's review of any plans, reports,

26  corrective measures, or procedures under this Section V (Compliance Measures) of this Consent

27  Decree, Mobil shall remain solely responsible for compliance with the Act.

28                                              13

1     c.     If EPA does object, in whole or in part, to Mobil's proposed corrective

2     action(s) and/or its schedule(s) of implementation, or, where applicable, to the absence of such

3     proposal(s) and/or schedule(s), EPA shall notify Mobil of that fact within sixty (60) days

4     following receipt of the report(s) required by Paragraph 12 above.  If EPA and Mobil cannot

5     agree within sixty (60) days on the appropriate corrective action(s), if any, to be taken in response

6     to a particular Flaring Incident, disputes may be resolved under Section XI (Dispute Resolution)

7     of this Consent Decree.

8     d.     Nothing in this Section V (Compliance Measures) shall be construed as a

9     waiver of EPA's rights under the Act for future violations of the Act or its regulations nor to

10    limit Mobil's right to take such corrective actions as it deems necessary and appropriate

11    immediately following a Flaring Incident or in the period during preparation and review of any

12    reports required under this Section.

13    14.    Permitting.    Not later than one hundred eighty (180) days after the Effective

14    Date, Mobil shall submit to EPA's permitting office, the following applications:

15    a.     An application for a PSD permit for the Main Flare, which shall include,

16    among other things, the following requirements:  (i) an analysis of the best available control

17    technology for the Main Flare for $SO_2$, CO, $NO_X$, and VOC; and (ii) an air quality analysis.  Such

18    application shall be submitted in accordance with the requirements of the Act and 40 C.F.R.

19    § 52.21, and shall include, among other things, terms and conditions that are at least as stringent

20    as the terms and conditions included in Paragraphs 9.a, 10, 11, and 25(i) - (ix) of this Consent

21    Decree, with the exception that the quarterly report required by Paragraph 25 may be changed, at

22    the discretion of the permitting authority, to a semiannual report.  Nothing in this Consent Decree

23    is intended to nor shall be construed to operate in any way to prohibit the applicable permitting

24    authority from issuing a PSD permit that includes requirements that differ from or are more

25    stringent than the requirements of this Consent Decree (e.g., emissions limits on a monthly, daily,

26    or hourly basis).

27    b.     An application for a Title V Permit, which includes, among other things,

28                                              14

1  terms and conditions that are at least as stringent as the terms and conditions in Paragraphs 9.a,

2  10, 11, and 25(i) - (ix) of this Consent Decree, with the exception that the quarterly report

3  required by Paragraph 25 may be changed, at the discretion of the permitting authority, to a

4  semiannual report.  Such application shall be submitted in accordance with the requirements of

5  Title V of the Act and 40 C.F.R. Part 71.

6                   VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

7        15.      In partial satisfaction of Plaintiff's claims, Mobil shall implement a SEP to

8  support public health for the local residents in the vicinity of Aneth, Utah, on the Navajo Nation.

9  Mobil shall spend at least $99,849 to purchase the x-ray equipment, x-ray processor, and

10 pulmonary function testing machine specified in Appendix D of this Consent Decree, or

11 substantially similar equipment.  Mobil shall order the equipment specified in Appendix D

12 within ninety (90) days after the Effective Date and have it delivered to:

13                 Nettie Prack
                Utah Navajo Health Systems, Inc.

14                 Montezuma Creek Community Health Center
                Highway 262 East

15                 Montezuma Creek, Utah  84534-0130
                Telephone:  (435) 651-3291

16

17       16.      Mobil is responsible for the satisfactory completion of the SEP in accordance with

18 the requirements of this Consent Decree.  Mobil may use contractors and/or consultants in

19 planning and implementing the SEP, but costs incurred for contractors or consulting services do

20 not constitute Eligible SEP Costs.

21       17.      With regard to the SEP, Mobil certifies the truth and accuracy of each of the

22 following:

23           a.      That to the best of Mobil's knowledge, a reasonable and good faith

24 estimate of the cost of the SEP is $99,849;

25           b.      That, as of the Effective Date, Mobil is not required to perform or develop

26 the SEP by any federal, state, or local law or regulation, nor is Mobil required to perform or

27 develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any

28                                           15

1    forum;

2            c.      That Mobil has not received, and is not negotiating to receive, credit for

3    the SEP in any other enforcement action; and,

4            d.      That Mobil will not receive reimbursement for any portion of the SEP

5    from any other person.

6        18.    SEP Completion Report.

7            a.      Within thirty (30) days after Mobil concludes that the SEP has been fully

8    implemented in accordance with the requirements of this Consent Decree, Mobil shall submit a

9    SEP Completion Report to EPA and DOJ at the addresses listed in Section XII (Notification) of

10   this Consent Decree.  The SEP Completion Report shall contain the following information:

11           (1)     A detailed description of the SEP as implemented;

12           (2)     A description of any problems encountered in completing the SEP and the

13                   solutions thereto;

14           (3)     An itemized list of all Eligible SEP Costs and acceptable evidence of such

15                   costs;

16           (4)     Certification that the SEP has been fully implemented pursuant to the

17                   provisions of this Consent Decree; and

18           (5)     A description of the environmental and public health benefits anticipated

19                   to result from implementation of the SEP.

20       19.    For purposes of Paragraph 18.a.(3), "acceptable evidence" includes invoices,

21   purchase orders, or other documentation that specifically identifies and itemizes the individual

22   costs of the goods or services for which payment is made.  Canceled drafts do not constitute

23   acceptable evidence unless such drafts specifically identify and itemize the individual costs of the

24   goods or services for which payment is made.

25       20.    Within sixty (60) days after receipt of a SEP Completion Report (unless the

26   United States notifies Mobil that additional time is required), the United States shall notify Mobil

27   whether or not Mobil has satisfactorily completed the SEP.  If Mobil's total Eligible SEP Costs

28                                               16

1  are less than $99,849, or if the SEP has not been satisfactorily completed, stipulated penalties

2  may be assessed under Section VIII (Stipulated Penalties) of this Consent Decree.  Disputes

3  concerning the satisfactory completion of the SEP may be resolved under Section XI (Dispute

4  Resolution) of this Consent Decree.

5       21.     Mobil hereby agrees that any funds expended by Mobil in the performance of the

6  SEP shall not be deductible for purposes of calculating federal and state taxes.  Mobil, at the time

7  of completion of the SEP, shall submit to the United States certification that any funds expended

8  in the performance of the SEP pursuant to this Consent Decree have not been and will not be

9  deducted for purposes of such taxes.

10      22.     Each submission required under this Section shall be signed by an official with

11 knowledge of the SEP and shall bear the certification language set forth in Paragraph 42 of this

12 Consent Decree.

13      23.     Any public statement, oral or written, in print, film, or other media, made by

14 Mobil making reference to the SEP under this Consent Decree shall include the following

15 language: "This project was undertaken in connection with the settlement of an enforcement

16 action, United States v. Mobil Exploration and Producing U.S. Inc., taken on behalf of the United

17 States Environmental Protection Agency under the Clean Air Act."

18            VII.  COMPLIANCE REPORTING AND RECORDKEEPING

19      24.     Calculation of the daily emissions from the Main Flare shall be based on that

20 day's recorded volume of gas combusted in the Main Flare and the most recent recorded

21 measurement of $H_2S$ concentration in the field gas at the Facility.  The emission limits in

22 Paragraph 9 require the use of rolling 365-day cumulative amounts.  In calculating the rolling

23 365-day cumulative amounts for the first year after the Effective Date, the daily emissions from

24 the Main Flare for each and every calendar day from 364 days prior to the Effective Date of this

25 Consent Decree through the Effective Date of this Consent Decree shall be deemed to be the

26 following:  (i) 101.9 pounds per day (lbs/day) of $SO_2$, (ii) 262.2 lbs/day of CO, (iii) 51.9 lbs/day

27 of $NO_X$, and (iv) 371.3 lbs/day of VOC.

28                                    17

25.    Within thirty (30) days following the end of each calendar quarter (i.e., January to March, April to June, July to September, October to December) after the Effective Date, Mobil shall submit to EPA, at the address listed in Section XII (Notification) of this Consent Decree and bearing the certification language set forth in Paragraph 42 of this Consent Decree, a quarterly report that includes:  (i) a list of the rolling 365-day cumulative Main Flare Emissions for each day in that quarter; (ii) a list of each day in the quarter when the emissions limits in Paragraph 9 of this Consent Decree were exceeded and, for each such day, the limit(s) exceeded and the amount(s) of excess emissions; (iii) a list of all emissions for the quarter that Mobil claims are attributable to Malfunctions and, for each such item on the list, a detailed demonstration that all of the qualifying criteria for Malfunctions that are listed in Paragraph 9.b of this Consent Decree have been satisfied; (iv) a list of all emissions for the quarter that may be attributable to $CO_2$ Breakthroughs, Scheduled Maintenance, or unscheduled maintenance of the Facility's compressors; (v) the date(s) and time(s) during the quarter when the thermocouple or flow meter associated with the Main Flare was inoperative; (vi) the date(s) and time(s) during the quarter when Mobil failed to measure or record the $H_2S$ concentration in the field gas at the Facility or failed to continuously measure or record the volume of gas combusted in the Main Flare; (vii) a certification that during the calendar quarter Mobil operated and maintained the compressor station equipment and Main Flare in a manner consistent with good air pollution control practices for minimizing emissions, and performed all of the obligations (including, but not limited to, inspection and training obligations) contained in the O&M Plan in Appendix B; (viii) a certification that the Field Flares have not been used to circumvent the emission limits in Paragraph 9; (ix) a list of total emissions from the Field Flares and the reason for the flaring; and (x) any and all reports generated from the root cause analysis and corrective action program of Paragraphs 12 and 13 above.

26.    Mobil shall maintain at the Facility copies of all notices, reports, information, submissions, and records required by this Consent Decree until the termination of this Consent Decree or as required by applicable law, whichever is later.  Mobil shall provide any of these

18

1  documents to EPA upon request.

2  VIII.  STIPULATED PENALTIES

3  27.    Stipulated Penalties.

4  a.    Subject to the force majeure provisions of Section X (Force Majeure),

5  Mobil shall be liable for stipulated penalties in the amounts set forth in this Paragraph 27 to the

6  United States for failure to comply with the terms and conditions of this Consent Decree as

7  follows:

8  (1)    for Mobil's failure to pay the full amount of the civil penalty set forth in

9  Section IV (Civil Penalty):  $5,000 for each day that payment of the civil penalty is delayed

10  beyond the date due;

11  (2)    for Mobil's failure to comply with any requirement of Section V

12  (Compliance Measures):

13  (a)    for Mobil's failure to comply with any of the emission limits in

14  Paragraph 9 of this Consent Decree (for the purpose of determining stipulated penalties for the

15  emission limits only, days of noncompliance are cumulative from the Effective Date and need

16  not be continuous) :

17

18  

| Days of Noncompliance from Effective Date to Termination of the Decree | Penalty per Day per Violation |
|---|---|
| 1st through 5th day | $1,000 |
| 6th through 10th day | $2,500 |
| 11th through 20th day | $5,000 |
| 21st day and beyond | $7,500 |

24  (b)    for Mobil's failure to comply with any of the specific requirements

25  in Paragraphs 11 through 13 of this Consent Decree identified in the following table:

26

27

28                                          19

| Requirement | Penalty |
|---|---|
| Failure to implement O&M Plan requirements (¶11.a.) | |
| Failure to maintain inspection logs or records (excluding the first full calendar quarter after the Effective Date) | $250 per day for each day after the third day of noncompliance within each calendar quarter |
| Levels 2, 3, and 4 tasks | $250 per task |
| Levels 5 and 6 tasks | $500 per task |
| Failure to conduct training | $500 per day |
| Failure to maintain spare parts | $1,000 per day |
| Root Cause Analysis (¶12) | $5,000 per event |
| Corrective Action (¶13) | $7,500 per event |

(c)    for Mobil's failure to comply with any other requirement of Section V of this Consent Decree not specifically referenced in this Paragraph 27.a (2)(a) or 27.a (2)(b) above:

| Period of Noncompliance | Penalty per Day per Violation |
|---|---|
| 1st through 10th day | $1,000 |
| 11th through 20th day | $2,500 |
| 21st day and beyond | $5,000 |

(3)    If Mobil's total Eligible SEP Costs are less than $99,849 in connection with the performance of the SEP specified in Appendix D of this Consent Decree, or if the SEP has not been satisfactorily completed, Mobil shall be liable for stipulated penalties, as set forth below. If Mobil has halted or abandoned completion of the SEP, such penalties shall accrue from the date of abandonment or the date set for completion of the SEP, whichever is earlier.

(a)    If the SEP has been satisfactorily completed but Mobil's total Eligible SEP Costs for the SEP are less than $99,849, Mobil shall pay stipulated penalties at the rate of one dollar for every one dollar that Mobil's total Eligible SEP Costs for that SEP are less

20

1 | than $99,849.

2                                        (b)       If a SEP has not been satisfactorily completed, Mobil shall pay

3 | stipulated penalties at the rate of $1.50 for every one dollar that Mobil's total Eligible SEP Costs

4 | for that SEP are less than $99,849.  However, to the extent that Mobil has made good faith and

5 | timely efforts to complete the project, Mobil shall pay stipulated penalties at the rate of one

6 | dollar for every one dollar that Mobil's total Eligible SEP Costs for that SEP are less than

7 | $99,849.  If a SEP is not satisfactorily completed but Mobil's total Eligible SEP Costs for that

8 | SEP are equal to or exceed $99,849, Mobil shall not be liable for any stipulated penalties for that

9 | SEP if Mobil has made good faith and timely efforts to complete the project and certifies with

10 | supporting documentation, no later than the date that Mobil is required to submit a SEP

11 | Completion Report for that project, that it has spent at least $99,849.  If Mobil does not provide

12 | the certification and documentation required by this subparagraph, or if the documentation

13 | provided does not support Mobil's certification, Mobil shall be deemed to be in violation of this

14 | Consent Decree and shall pay a stipulated penalty of $7,500.  Mobil shall be deemed to have

15 | made good faith and timely efforts to complete the project if Mobil complies with the specific

16 | obligations set forth in Paragraphs 15, 17 through 19, and 21 through 23.

17                                      (c)       If Mobil fails to:  (i) order the equipment within 90 days after the

18 | Effective Date as required by Paragraph 15; or (ii) timely submit a SEP Completion Report under

19 | Paragraph 18, Mobil shall pay stipulated penalties as follows:

| Period of Noncompliance | Penalty per Day per Violation |
|---|---|
| 1st through 14th day | $100 |
| 15th through 30th day | $250 |
| 31st day and beyond | $500 |

25                                    (4)       for Mobil's failure to comply with any requirement of Section IX (Right of

26 | Entry):  $5,000 per day for each failure to comply; and

27                                    (5)       for Mobil's failure to comply with any other requirement of this Consent

28 |

1  Decree not specifically referenced in this Paragraph 27.a (1) through (4) above: $1,000 per day

2  for each failure to comply.

3          b.    All stipulated penalties shall automatically begin to accrue on the day after

4  the complete performance is due or the first day a violation occurs, and shall continue to accrue

5  through the final day of the correction of the noncompliance or completion of the activity.

6  Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties for separate

7  violations of this Consent Decree. Stipulated penalties shall accrue regardless of whether

8  Plaintiff has notified Mobil of a violation of the Consent Decree.

9          c.    Any stipulated penalty accruing pursuant to this Consent Decree shall be

10  payable upon demand and due not later than thirty (30) calendar days from EPA's written

11  demand.

12      28.    Stipulated penalties shall be paid by certified or cashier's check in the amount

13  due, shall be made payable to the "U.S. Department of Justice," referencing DOJ #90-5-2-1-2237

14  and USAO File Number 2003V00248, and shall be delivered by certified mail with return receipt

15  requested to:

16      United States Attorney, District of Utah
        Attention: Financial Litigation Unit
17      185 South State Street, Suite 400
        Salt Lake City, Utah 84111
18

19  Concurrently with making the payment, Defendant shall send notice of payment to EPA and

20  DOJ, directed to the addresses provided in Section XII (Notification). The notice of payment

21  shall also identify: (i) the specific provision of this Section VIII (Stipulated Penalties) related to

22  such payment, and (ii) a description of the violation(s) of this Consent Decree for which the

23  stipulated penalties or interest are being tendered.

24      29.    Interest. If Mobil fails to pay the full amount of the civil penalty specified in

25  Section IV (Civil Penalty) when due, or the full amount of any stipulated penalty specified in this

26  Section VIII (Stipulated Penalties) within 30 days of EPA's written demand, then Mobil shall pay

27  to the United States (in addition to the unpaid balance of each penalty) interest on the late

28                                      22

1  payment for each day of late payment after the initial 30-day time period.  The rate of interest

2  shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.  If Mobil disputes

3  its obligation to pay part or all of a stipulated penalty, it shall initiate the dispute resolution

4  procedures under Section XI (Dispute Resolution).  If Mobil invokes dispute resolution, Mobil

5  shall pay to the United States any amount that it does not dispute.

6          30.      Payment of stipulated penalties for a violation of this Consent Decree shall not

7  preclude the United States from seeking additional monetary penalties or other relief for the

8  violations giving rise to the stipulated penalties.  The United States reserves its right to pursue

9  any or all relief for any or all violations directly, either administratively or judicially, and outside

10  the provisions of this Consent Decree.  Where a violation of this Consent Decree is also a

11  violation of the Clean Air Act, Defendant shall be allowed a credit, for any stipulated penalties

12  paid, against any statutory penalties imposed for such violation.

13                              IX.  RIGHT OF ENTRY

14          31.      EPA and its contractors, consultants, and agents shall have authority to enter the

15  Facility at all reasonable times, upon presentation of credentials.  This provision in no way limits

16  or otherwise affects any right of entry held by EPA pursuant to applicable federal, state, or local

17  laws, regulations, or permits.

18                              X.  FORCE MAJEURE

19          32.      Mobil shall satisfy the requirements of Paragraphs 9 through 26 of this Consent

20  Decree except to the extent, and for the period of time, that such performance is prevented or

21  delayed by events that constitute a force majeure.

22          33.      For purposes of this Consent Decree, a "force majeure" is defined as an event

23  arising from causes beyond the control of Mobil, its contractors, or any entity controlled by

24  Mobil that prevents or delays the performance of any obligation under this Consent Decree

25  despite Mobil's best efforts to fulfill the obligation.  "Best efforts" include anticipating any

26  potential force majeure event and addressing the effects of any such event (i) as it is occurring

27  and (ii) after it has occurred, such that delay is minimized to the extent possible.  "Force

28                                        23

1   majeure" does not include Mobil's financial inability to perform any obligation under this

2   Consent Decree.

3        34.    In the event of a force majeure, the time for performance of the activity delayed by

4   the force majeure shall be extended for the time period of the delay attributable to the force

5   majeure.  The time for performance of any activity dependent on the delayed activity shall be

6   similarly extended, except to the extent that the dependent activity can be reasonably

7   implemented in a shorter time.  EPA shall determine whether the dependent activities will be

8   delayed by the force majeure and whether the time period should be extended for performance of

9   such activities.  Mobil shall adopt all reasonable measures to avoid or minimize any delay caused

10   by a force majeure.

11        35.    When an event occurs or has occurred that may delay or prevent the performance

12   of any obligation under this Consent Decree and that Mobil believes is a force majeure, Mobil

13   shall notify by telephone, at (415) 947-8715, the Chief of the Air Enforcement Office, Air

14   Division of EPA Region IX, within 72 hours of Mobil's knowledge of such event.  Telephone

15   notification shall be followed by written notification to EPA, at the address in Section XII

16   (Notification) of this Consent Decree, made within seven (7) working days of Mobil's knowledge

17   of the event.  The written notification shall fully describe (i) the event that may delay or prevent

18   performance; (ii) the reason that such event may delay or prevent performance; (iii) whether

19   Mobil claims that such event constitutes a force majeure under this Consent Decree; (iv) the

20   reasons any such delay is beyond the reasonable control of Mobil; (v) the anticipated duration of

21   the delay; (vi) actions taken or to be taken to prevent or minimize the delay; (vii) a schedule for

22   implementation of any measures to be taken to prevent or minimize the delay or the effect of the

23   delay; and (viii) the time needed to implement any dependent activities.

24        36.    Mobil's failure to comply with the force majeure notice requirements provided in

25   Paragraph 35 above for any delay in performance will be deemed an automatic forfeiture of its

26   right to assert that the delay was caused by a force majeure unless such failure to provide notice

27   was caused by a force majeure.

28                        24

1    37.    Within seven (7) working days after receiving notice from Mobil of a force

2 majeure, EPA shall provide written notification to Mobil stating whether Mobil's request for a

3 delay is justified.  EPA's failure to respond to a request for a delay shall be deemed a denial of

4 that request.  If Mobil disagrees with EPA's force majeure determination, then Mobil may initiate

5 the dispute resolution procedures of Section XI (Dispute Resolution) of this Consent Decree.

6                        XI.  <u>DISPUTE RESOLUTION</u>

7    38.    If Mobil disputes any determination made by EPA under this Consent Decree

8 related to (i) a request by EPA for stipulated penalties, (ii) EPA's determination pursuant to

9 Paragraphs 11, 13, or 20, (iii) EPA's determination related to force majeure, or (iv) the

10 termination of the Consent Decree under Paragraph 53, Mobil shall send a written notice to EPA

11 and DOJ outlining the nature of the dispute and requesting informal negotiations to resolve the

12 dispute.  Such period of informal negotiations shall not extend beyond ten (10) working days

13 from the date when the notice was sent unless the Parties agree otherwise.

14    39.    If the informal negotiations are unsuccessful, then the determination of EPA shall

15 control, unless Mobil files a motion with this Court for dispute resolution.  Any such motion

16 must be filed within thirty (30) days after Mobil's receipt of a notice in writing terminating

17 informal negotiations, and such motion must be concurrently sent to EPA and DOJ in accordance

18 with the Section XII (Notification) of this Consent Decree.  The United States shall then have

19 thirty (30) days to respond to Mobil's motion.  The Court's decision in any such dispute

20 resolution proceeding shall be based on the administrative record.  Mobil shall bear the burden of

21 proving that (i) in disputes regarding EPA's request for stipulated penalties under Section VIII

22 (Stipulated Penalties) of this Consent Decree or EPA's determination under Paragraphs 11 or 13,

23 Mobil did not violate the terms and conditions of this Consent Decree; (ii) in disputes regarding

24 EPA's determination under Paragraph 20, Mobil has satisfied all of its obligations under Section

25 VI (Supplemental Environmental Project); (iii) in disputes regarding Section X (Force Majeure),

26 the delay was caused by circumstances beyond the control of Mobil, its contractors, and agents,

27 all reasonable measures were taken to minimize delay, and the duration of the delay was

28                              25

1   reasonable under the circumstances; and (iv) in disputes regarding termination of this Consent

2   Decree under Paragraph 53, Mobil has satisfied all of its obligations under this Consent Decree.

3   The Court shall uphold EPA's determination unless Mobil proves that the determination is

4   arbitrary and capricious, or otherwise not in accordance with law.

5        40.     A timely motion by Mobil will not toll the accrual of stipulated penalties under

6   this Consent Decree for any ongoing noncompliance with respect to the disputed matter.

7                                 XII.  NOTIFICATION

8        41.     Except as otherwise specifically stated, all notices and submissions from Mobil to

9   EPA required by this Consent Decree shall be sent by certified mail, express mail, or similar

10  overnight mail delivery with return receipt requested and addressed to:

11              Director, Air Division (AIR-1)
                U.S. Environmental Protection Agency, Region IX
12              75 Hawthorne Street
                San Francisco, California  94105
13              Attention:  John Kim

14  All notices and submissions sent to EPA or DOJ shall refer to this Consent Decree and the

15  Effective Date of the Consent Decree, and shall cite the case name of <u>United States v. Mobil</u>

16  <u>Exploration and Producing U.S. Inc.</u>, the civil action case number, and the DOJ Case Number

17  90-5-2-1-2237.

18       42.     All notices and submissions made pursuant to this Consent Decree shall be signed

19  and affirmed by a responsible official of Mobil using the following certification statement:

20              I certify under penalty of law that I have examined and am familiar
                with the information submitted in this document and all
21              attachments and that this document and its attachments were
                prepared either by me personally or under my direction or
22              supervision in a manner designed to ensure that qualified and
                knowledgeable personnel properly gathered and presented the
23              information contained therein.  I further certify, based on my
                personal knowledge or on my inquiry of those individuals
24              immediately responsible for obtaining the information, that the
                information is true, accurate, and complete.  I am aware that there
25              are significant penalties for submitting false information, including
                the possibility of fines and imprisonment for knowing and willful
26              submission of a materially false statement.

27       43.     As to DOJ, notices and submissions required to be sent by this Consent Decree

28                                       26

1   shall be submitted to:

2                   Chief, Environmental Enforcement Section
                  Attn:  DOJ # 90-5-2-1-2237 (Mullaney)

3                   United States Department of Justice
                  301 Howard Street, Suite 1050

4                   San Francisco, California  94105

5       44.    As to Mobil, notices and submissions required to be sent by this Consent Decree

6   shall be submitted to:

7                   Vice President
                  Mobil Exploration and Producing U.S. Inc.

8                   CORP-WGR-1260
                  396 West Greens Road

9                   Houston, Texas  77067

10      45.    All submissions made pursuant to this Consent Decree shall be deemed submitted

11   on the date postmarked.

12                XIII.  EFFECT OF SETTLEMENT/NON-WAIVER PROVISIONS

13      46.    Neither by entering into this Consent Decree nor by taking any action in

14   accordance with it (including paying the civil penalty required by this Consent Decree) shall

15   Defendant be deemed to have admitted any liability for any purpose or any responsibility for, or

16   wrongdoing relating to, the matters specifically alleged in the Complaint, or to have admitted any

17   issues of law or fact related to or arising from the matters specifically alleged in the Complaint,

18   except as set forth in Section I (Jurisdiction and Parties Bound) of this Consent Decree.  It is the

19   intent of the Parties to this Consent Decree that neither the terms and conditions of this Consent

20   Decree nor any act of performance by Defendant shall be (i) admissible in any proceeding for the

21   purpose of imputing, implying, or otherwise raising an inference of wrongdoing by Defendant, or

22   (ii) used against Defendant as collateral estoppel in any other proceeding with any third party not

23   a signatory to this Consent Decree.

24      47.    Entry of this Consent Decree and compliance with the requirements herein

25   resolves the civil claims of the United States against Defendant for the violations specifically

26   alleged in the Complaint filed in this action, up to the Date of Lodging of the Consent Decree.

27      48.    Except as specifically provided herein, the United States does not waive any rights

28

1  or remedies available to it for violation by Defendant of federal or state laws or regulations. This

2  Consent Decree shall in no way affect the United States' ability to bring future actions for any

3  matters not specifically alleged in the Complaint filed in this action, up to the Date of Lodging of

4  the Consent Decree. Nothing in this Consent Decree is intended to nor shall be construed to

5  operate in any way to resolve any criminal liability of Defendant.

6      49.    This Consent Decree in no way affects Defendant's responsibilities to comply

7  with all federal, state, or local laws, regulations or permits, including, but not limited to, the

8  reporting requirements of Section 103(a) of the Comprehensive Environmental Response,

9  Compensation, and Liability Act, 42 U.S.C. § 9603(a), and Section 304 of the Emergency

10  Planning and Community Right-to-Know Act, 42 U.S.C. § 11004, and the regulations

11  promulgated thereunder. This Consent Decree is not, and shall not be construed as, a permit or a

12  modification of a permit. Nothing in this Consent Decree shall diminish EPA's ability to request

13  information from Defendant under applicable laws or regulations.

14      50.    This Consent Decree does not limit or affect the rights of the Plaintiff or

15  Defendant against any third parties (parties not specifically part of this Decree), nor does it limit

16  the rights of such third parties against Defendant. This Consent Decree shall not be construed to

17  create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

18                    XIV.  EFFECTIVE DATE AND TERMINATION

19      51.    This Consent Decree shall take effect on the date of entry by this Court.

20      52.    This Consent Decree shall terminate when all of the following conditions have

21  been met:

22              a.      Mobil has complied with all of the requirements set forth in Sections V

23  (Compliance Measures) and VI (Supplemental Environmental Project) of this Consent Decree;

24              b.      Mobil has paid the civil penalty and interest as set forth in Section IV

25  (Civil Penalty), all stipulated penalties and interest as set forth in Section VIII (Stipulated

26  Penalties), and no penalties or other monetary obligations due under this Consent Decree are

27  outstanding or owed to the United States;

28                                        28

1          c.     all disputes arising under the Consent Decree have been resolved;

2          d.     Mobil has received a Final Title V Permit (i) for which Mobil submitted

3   an application in accordance with Paragraph 14 of this Consent Decree; and (ii) that includes, but

4   is not limited to, federally-enforceable terms and conditions that are at least as stringent as all of

5   the terms and conditions included in Paragraphs 9.a, 10, 11, and 25(i) - (ix) of this Consent

6   Decree, with the exception that the quarterly report required by Paragraph 25 may be changed, at

7   the discretion of the permitting authority, to a semiannual report; and

8          e.     this Court approves termination of this Consent Decree.

9          53.    Mobil shall initiate termination of this Consent Decree by submitting a written

10  certification concurrently to EPA and DOJ at the addresses listed in Section XII (Notification),

11  that (i) all conditions for termination pursuant to Paragraph 52 above (except for the condition in

12  52.e referring to this Court's approval of termination) have been satisfied; and (ii) Mobil believes

13  that the Consent Decree should be terminated.  After receiving notice from Mobil, EPA shall

14  provide Mobil with a written response, either stating that EPA agrees that the Consent Decree

15  should be terminated, and submitting a motion to this Court requesting that the Consent Decree

16  be terminated, or stating that EPA has determined that the Consent Decree should not be

17  terminated.  If EPA fails to provide written response within sixty (60) days after receiving written

18  notice from Mobil or if EPA determines that the Consent Decree should not be terminated, Mobil

19  may initiate dispute resolution procedures pursuant to Section XI (Dispute Resolution).

20                         XV.  MISCELLANEOUS

21         54.    Fees.  Each Party shall bear its own costs and attorneys' fees in this action.

22         55.    Integration and Modifications.  This Consent Decree (including its appendices)

23  contains the entire agreement between the Parties.  The notification requirements of this Consent

24  Decree may be modified only if such modifications are made in writing and approved by all

25  Parties.  In all other respects, this Consent Decree may not be enlarged, modified, or altered

26  unless such modifications are made in writing and approved by all Parties and this Court.

27         56.    Retention of Jurisdiction.  Until the termination of this Consent Decree pursuant

28                                    29

1  to Section XIV (Effective Date and Termination), this Court shall retain jurisdiction over this

2  action and all disputes arising hereunder (to the extent that this Consent Decree provides for

3  resolution of disputes by this Court) for the purposes of implementing and enforcing the terms

4  and conditions of this Consent Decree.

5      57.    Public Comment.  Mobil agrees and acknowledges that final approval of this

6  Consent Decree by the United States and entry of this Consent Decree by this Court is subject to

7  the requirements of 28 C.F.R. § 50.7, which provides for notice of the Lodging of this Consent

8  Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and

9  consideration by the United States of any comments prior to entry of the Consent Decree by this

10  Court.  The United States reserves the right to withdraw its consent to this Consent Decree based

11  on comments received during the public notice period.  Mobil consents to entry of this Consent

12  Decree without further notice and shall not oppose or appeal its entry by the Court.

13      58.    Final Judgment.  Upon entry by this Court, this Consent Decree shall constitute a

14  final judgment for purposes of Federal Rules of Civil Procedure 54 and 58.

15

16                                ORDER

17  IT IS SO ORDERED, this ___7th___ day of ____June____, 2005.

18

19                          _____

20                          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28                                30

FOR PLAINTIFF UNITED STATES OF AMERICA:

Dated: **3/25/05**   By: *Tom Sansonetti/rq*

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Dated: **4-7-05**   *Robert D. Mullaney*

ROBERT D. MULLANEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Telephone: (415) 744-6491

PAUL M. WARNER
United States Attorney
JEANNETTE SWENT
Assistant United States Attorney
District of Utah
185 South State Street, Suite 400
Salt Lake City, Utah 84111

31

FOR PLAINTIFF UNITED STATES OF AMERICA (continued):

Dated: 4.6.05

THOMAS V. SKINNER
Acting Assistant Administrator for Enforcement
  and Compliance Assurance
United States Environmental Protection Agency

Dated: 2/15/05

WAYNE NASTRI
Regional Administrator
United States Environmental Protection Agency, Region IX

OF COUNSEL:

THOMAS P. MINTZ
Assistant Regional Counsel
Office of Regional Counsel
United States Environmental
  Protection Agency, Region IX
75 Hawthorne Street
San Francisco, California  94105

32

1 | FOR DEFENDANT MOBIL EXPLORATION & PRODUCING U.S. INC.:

2

3

4 | Dated: 2/15/05                    _Sara N. Ortwein_

5 | SARA N. ORTWEIN
   | Vice President
6 | Mobil Exploration and Producing U.S., Inc.
   | 396 West Greens Road
7 | Houston, Texas  77067

8

9

10 | Dated: 2/15/05                   _Larry W. Lindeen_

11 | LARRY W. LINDEEN
    | Exxon Mobil Corporation
12 | 800 Bell Street
    | Houston, Texas  77002-7426
    | Telephone:  (713) 656-3429
13

    | Attorney for Defendant
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33